1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TILRAY BRANDS, INC.<br><br>                    Petitioner,<br><br>          v.<br><br>KATHRYN P. DICKSON,<br><br>                    Respondent. | CASE NO. 2:23-cv-700<br><br>ORDER |

## 1.  INTRODUCTION

This matter comes before the Court on two post-arbitration motions following a $4 million award in Minnesota. In one corner is Petitioner Tilray Brands, Inc.'s motion to vacate, modify, or correct the award, and in the other is Respondent Kathryn P. Dickson's motion to dismiss or transfer this action back to Minnesota. Dkt. Nos. 9, 21. The Court has reviewed the papers submitted in support of and opposition to the motions, and it held a hearing on February 12, 2024. For the reasons explained below, the Court GRANTS Dickson's Motion to Dismiss and DENIES Tilray's Motion to Vacate as moot.

## 2. BACKGROUND

This matter stems from an employment arbitration between Tilray and Dickson. Dkt. No. 1 ¶¶ 5-11. In November 2019, Dickson was hired as President of Manitoba Harvest, a wholly owned subsidiary of Tilray, Inc. (now Tilray Brands). Dkt. No. 9 at 9. As part of her hiring, Dickson executed an Agreement to Arbitrate on November 20, 2019, and an Employment Agreement on December 4, 2019. Dkt. No. 1 ¶ 5. Under the Employment Agreement, Dickson was entitled to 100,000 "service-based" restricted stock units ("RSUs") that vested over three years from the date they were granted. *Id*. The Employment Agreement also provided for accelerated vesting if Dickson was terminated because of a "pending Change of Control." *Id*. Dickson's Employment Agreement listed Minneapolis, Minnesota, as her "primary work location." Dkt. No. 1-1 § 1(a).

About a year later, Dickson was terminated without notice several hours before Tilray announced its merger agreement with another public company, Aphria. Dkt. No. 1-3 at 3. Tilray and Dickson disagree about why she was terminated: Dickson contends she was fired because of the pending merger between Tilray and Aphria (*i.e.*, a "pending Change in Control"), but Tilray claims it fired her because of her poor job performance, and thus that her RSUs did not vest on an accelerated basis. Dkt. No. 6 at 10. Separately, there was a dispute about whether any post-employment severance payment or other benefits were owed to Dickson and whether she breached a confidentiality clause within the employment agreement. *Id*. at 10-11.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Dickson submitted the dispute to an arbitrator for resolution. Dkt. No. 1 ¶ 9. The parties selected retired-judge Thomas S. Fraser as the arbitrator, and arbitration proceedings began in Minneapolis on December 7, 2022. *Id.* ¶¶ 9-10; Dkt. No. 1-3 at 2. The arbitrator eventually awarded Dickson $3,134,000 for her RSUs, $300,000 in severance, and $300,000 for a discretionary bonus, plus amounts for prejudgment interest and double damages. Dkt. No. 1-3 at 27. Following the proceedings, the arbitrator entered a supplemental award for Dickson's attorneys' fees and costs. Dkt. No. 10-1 at 12.

On May 12, 2023, Tilray filed a Petition to Vacate, Modify, or Correct Arbitration Award ("Petition") in the U.S. District Court for the Western District of Washington, requesting that the arbitrator's award be vacated. In its later filed motion to vacate, Tilray argued among other things that the arbitrator exceeded his authority, acted with "partiality," engaged in misconduct, showed manifest disregard for the law, and committed facial legal error. Dkt. No. 1 ¶¶ 11-16. Dickson responded by filing a motion to dismiss, claiming this Court lacked personal jurisdiction to adjudicate this matter. Dkt. No. 21.

### 3.  ANALYSIS

**3.1  Legal standard.**

Dickson moves to dismiss Tilray's petition under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion is based on written

ORDER - 3

materials, rather than an evidentiary hearing, a plaintiff's pleadings and affidavits need only make a "prima facie" showing of personal jurisdiction. *Id.* (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995)).

In this context, a prima facie showing means that the plaintiff has produced admissible evidence which, if believed, could establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "The plaintiff cannot simply rest on the bare allegations of its complaint if an allegation is challenged by the defendant, but uncontroverted allegations in the complaint must be taken as true." *Corker v. Costco Wholesale Corp.*, 585 F. Supp. 3d 1284, 1289 (W.D. Wash. 2022) (cleaned up). Any conflicts between sworn statements must be resolved in favor of the plaintiff. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

## 3.2   The Federal Arbitration Act (FAA) does not confer the Court with personal jurisdiction over Dickson.

Bearing the burden of demonstrating the Court's jurisdiction, Tilray claims that "[n]othing in §§ 10 or 11 [of the FAA] suggest that a district court must examine the existence of personal jurisdiction over a party who has fully litigated her claims." Dkt. No. 27 at 17-18. Tilray argues instead that "[w]hat the Court must do is determine whether venue is proper" under the general venue statute, and that if venue is proper, "a type of derivative personal jurisdiction [is conferred] on the district court." *Id.* at 17-19.

Tilray is wrong on all counts, as its arguments impermissibly blur the lines between *venue* and *personal jurisdiction*. Venue and personal jurisdiction are not

the same despite some overlapping considerations. Personal jurisdiction carries a due process dimension, while venue is a statutory creation concerned with the geographic location of the most convenient court. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Thus, even when a statute specifies the proper venue, personal jurisdiction over the defendant must still be found within the district in which venue is laid. *See Action Embroidery,* 368 F.3d at 1178–79 (9th Cir. 2004) ("It has long been recognized that the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper.").

Contrary to Tilray's claims, nothing in the FAA nor the general venue statute alter these bedrock principles of civil procedure. Sections 10 and 11 authorize the district court "wherein the [arbitration] award was made" to make an order vacating, modifying, or correcting the award. 9 U.S.C. §§ 10(a), 11. These venue provisions are permissive, not mandatory, so while parties may bring petitions to vacate or modify an arbitration award in the district where the award was made, they need not do so if venue is proper elsewhere under the general venue statute. *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 196-198. (2000). The general venue statute guarantees that "'*so long as a federal court has personal jurisdiction over the defendant*, venue will always lie somewhere.'" *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1140 (9th Cir. 2022) (emphasis added) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 57 (2013)). But the general venue statute does not itself authorize personal

1    jurisdiction, which is a separate and distinct inquiry that courts must resolve.

2    *Action Embroidery,* 368 F.3d at 1178-79. As explained below, the Court lacks

3    personal jurisdiction over Dickson. *See* Section 3.3.

4         None of the law cited by Tilray commands a different result regarding the

5    Court's jurisdiction. Tilray begins with a misguided reading of *Badgerow v. Walters,*

6    596 U.S. 1 (2022). In *Badgerow*, the Supreme Court clarified that district courts

7    cannot confirm or vacate arbitral awards under Sections 9 and 10 of the FAA[1]

8    unless there is an independent jurisdictional basis to consider the case. *Id.* at 8. To

9    determine whether a petition to confirm or vacate falls within the court's

10   jurisdiction, district courts cannot "look through" the petition to the underlying

11   substantive controversy. *Id.* at 9-11. Instead, a court may look only to the

12   application actually submitted to it in assessing its jurisdiction. *Id.* at 5.

13        Far from recognizing any "type of derivative personal jurisdiction," as Tilray

14   contends, *Badgerow* didn't even discuss personal jurisdiction. But there is no reason

15   why *Badgerow*'s teachings should not apply when analyzing personal jurisdiction,

16   as it instructed district courts to closely—and separately from the question of

17   venue—examine the face of a petition to vacate for a jurisdictional hook.

18

19

20   [1] Tilray argued unconvincingly at oral argument that because *Badgerow* did not
21   examine Section 11, *Badgerow*'s central holding is inapplicable to motions to modify
     or correct an arbitration award. But the phrase that animated the Supreme Court's
22   textual analysis of Sections 9 and 10 (i.e., "save for the arbitration agreement") is
     also missing from Section 11. *Badgerow,* 596 U.S. at 9-11; 9 U.S.C. § 11. So Section
     11 must be read the same way as Sections 9 and 10, reaching the same result under
23   the ordinary principles of statutory construction. *Id.*

ORDER - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Similarly, Tilray argues that *Balan v. Tesla Motors Inc.*, No. 19-cv-67-MJP, 2022 WL 2192872 (W.D. Wash. June 16, 2022) supports its position. In *Balan,* the esteemed Judge Marsha Pechman of this District granted the defendant's motion to dismiss a Section 10 petition to vacate an arbitration award. *Id.* at *4. Relying on *Badgerow,* Judge Pechman held that whether the court had personal jurisdiction turned on a purposeful availment analysis limited to the defendant's conduct related to the arbitration and not the underlying dispute. *Id.* at *3 ("Nothing about the arbitration relates to Washington and [the defendant] does not appear to have performed any type of conduct related to the arbitration that promotes business within the State. [The plaintiff] has failed to establish that the arbitration and outcome are sufficient for [the defendant] to have purposefully availed himself of Washington."). In this way, *Balan* is indistinguishable from this case and confirms that, when faced with a motion to vacate an arbitral award, courts must determine first whether they have personal jurisdiction over the defendant.

Accordingly, the Court finds that the FAA does not authorize personal jurisdiction over Dickson.

### 3.3    Dickson lacks minimum contacts with Washington. As a result, personal jurisdiction cannot be had.

If no federal statute authorizes personal jurisdiction, federal courts apply the law of the state in which they sit to determine whether the exercise of personal jurisdiction over a defendant is appropriate. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute permits courts to "exercise jurisdiction over a nonresident defendant to the extent

permitted by the due process clause of the United States Constitution." *SeaHAVN,*
*Ltd. v. Glitnir Bank*, 226 P.3d 141, 149 (Wash. Ct. App. 2010).

Jurisdiction reflects due process only if the defendant has "certain minimum
contacts with [the forum state] such that the maintenance of the suit does not
offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*
*Wash.*, 326 U.S. 310, 316 (1945). Based on the extent and nature of the contacts, the
Court can exercise either general or specific jurisdiction. *Goodyear Dunlop Tires*
*Operations, S.A., v. Brown,* 564 U.S. 915, 919 (2011).

### 3.3.1    The Court does not have general jurisdiction over Dickson.

"For general jurisdiction to exist, a defendant must engage in 'continuous and
systematic general business contacts,' . . . that 'approximate physical presence' in
the forum state[.]" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223–24
(9th Cir. 2011).

Tilray argues this standard is met, relying exclusively on its former CEO
Brendan Kennedy's declaration. Kennedy states Dickson was interviewed in Seattle
in 2019. Dkt. No. 28 ¶ 5. He "learned from" other Tilray officers that Dickson was in
Tilray's Seattle offices in 2020, and that he had "a recollection that Ms. Dickson
may have come into our conference room to discuss certain matters with us. I also
have a recollection of seeing her and other senior executives at a restaurant in
Seattle." *Id*. Further, Kennedy states that Dickson reported to him and sought
support from Tilray executives in Seattle. *Id*. ¶ 9. He also points out that Manitoba
Harvests's largest customer was Costco, which is based in Washington. *Id*. ¶ 10.

1   Finally, but for the pandemic, Kennedy argues Dickson would have been in Seattle

2   on a "regular basis, perhaps monthly or quarterly." *Id*. ¶ 12.

3       These facts fail to show Dickson had "continuous and systematic" contacts

4   with Washington to render her "essentially at home" in the state. *Goodyear*, 564

5   U.S. at 919. Dickson is a Minnesota citizen. Dkt. No. 1. at 1. Her Employment

6   Agreement listed Minneapolis as her primary work location, and she did in fact

7   work in Tilray's Minnesota office. Dickson also declares under penalty of perjury

8   that any travel to Washington pre-dated her employment with Tilray and that she

9   did not perform any work for Tilray in Washington. Dkt. Nos. 22, 34. Dickson

10  produced travel records supporting these claims. *See* Dkt. No. 34. Kennedy—with

11  his vague recollections and reliance on hearsay—does not. *See* Dkt. No. 28. Even

12  taking Tilray's shaky version of the facts as true, its claims aren't enough to

13  establish the Court's general jurisdiction over Dickson.

14  **3.4   The Court cannot exercise specific jurisdiction over Dickson.**

15      Next, the Court considers whether it has specific jurisdiction over Dickson.

16  The Ninth Circuit applies a three-part test when analyzing specific jurisdiction over

17  a non-resident defendant:

18          (1) The non-resident defendant must purposefully direct his activities or
19          consummate some transaction with the forum or resident thereof; or
            perform some act by which he purposefully avails himself of the privilege
20          of conducting activities in the forum, thereby invoking the benefits and
            protections of its laws; (2) the claim must be one which arises out of or
21          relates to the defendant's forum-related activities; and (3) the exercise
            of jurisdiction must comport with fair play and substantial justice, i.e. it
22          must be reasonable.

23  *Schwarzenegger*, 374 F.3d at 802.

1        In cases that sound mostly in contract, courts ask whether the non-resident

2    defendant "purposefully availed [themselves] of the privilege of doing business in

3    the forum," meaning the defendant "must have 'performed some type of affirmative

4    conduct which allows or promotes the transaction of business within the forum

5    state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Sher v.*

6    *Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). "[T]he formation of a contract with a

7    nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Id*.

8    (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

9        As discussed above, the Court will not "look through" the petition to the

10   underlying facts to determine specific jurisdiction, so it will instead focus on the

11   petition actually submitted to the Court. *See Badgerow*, 596 U.S. at 5; *Balan*, No.

12   C19-67 MJP, 2022 WL 2192872, at *3-4. And because a petition to vacate an

13   arbitration award sounds in contract, the Court will apply the purposeful availment

14   framework. *Balan*, No. C19-67 MJP, 2022 WL 2192872, at *3 (citing *Badgerow,* 596

15   U.S. at 9).

16       Dickson commenced arbitration in Minnesota, the arbitration proceeded in

17   Minnesota, and the arbitration award was entered in Minnesota. *See* Dkt. No. 1-3.

18   Beyond a choice of law provision providing that Washington law would apply to any

19   dispute, *see* Dkt. No. 1 ¶ 8; Dkt. No. 1-1 ¶ 17, nothing about the arbitration relates

20   to Washington; *see also Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d

21   570, 573 (5th Cir. 2020) ("[T]he choice-of-law clause in the [relevant contract] does

22   not suggest the parties expected to resolve their disputes in Texas."). These facts

23   are undisputed and show that Dickson engaged in no arbitration-related conduct

that allows or promotes business within Washington. *See Boschetto*, 539 F.3d at 1016.

Tilray urges the Court to look through the petition, arguing that Dickson's "contacts" with Washington "are her own and stem not merely from her position as an officer of a corporation that has sufficient contact with the forum state," but that Dickson's contacts also include "her direct contacts with Tilray and customers of the subsidiary she headed." Dkt. No. 27 at 13. Even if the correct approach were to look through the petition—it is not—Tilray still fails to establish specific jurisdiction. This is because "the Supreme Court ha[s] 'consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.'" *Briskin v. Shopify, Inc.*, 87 F.4th 404, 416 (9th Cir. 2023) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). As the Supreme Court has explained, "'a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Rather, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (cleaned up).

Here, the underlying controversy was whether Tilray breached its employment agreement with Dickson. Tilray can point to no action or activity by

Dickson to suggest that her underlying claims are linked to Washington nor that she availed herself of Washington in any way by contracting with Tilray—a Delaware company—even if Dickson performed "some of her duties" in Washington, as Tilray claims. *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King*, 471 U.S. at 475)).

Because there is no connection between the underlying controversy and Washington, specific jurisdiction is lacking regardless of the extent of Dickson's unconnected activities in the State. *Bristol-Myers Squibb*, 582 U.S. at 264 ("'[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales'" (quoting *Goodyear*, 564 U.S. at 931, n.6)).

### 3.5   Tilray's other arguments do not change the outcome here.

Tilray makes several other arguments to keep this action in the Western District of Washington: Dickson waived her ability to challenge personal jurisdiction in *Washington* by failing to object to personal jurisdiction during the underlying arbitration in *Minnesota*; and Dickson consented to personal jurisdiction in this district. The Court finds these arguments to be meritless, as Tilray offers no controlling or persuasive case law in support of its claims. The Court will not consider them further.

Lastly, Tilray requests jurisdictional discovery. But the Court has already taken Tilray's uncontroverted allegations in the petition as true and resolved any conflicts between the parties' sworn statements in Tilray's favor. Tilray neither alleges nor explains what information is currently beyond its control or what information it hopes to obtain if discovery is permitted. Accordingly, the Court declines Tilray's request to allow jurisdictional discovery. *See Boschetto,* 539 F.3d at 1020 (no abuse of discretion in denying discovery where request is "based on little more than a hunch that it might yield jurisdictionally relevant facts.").

## 4. CONCLUSION

In sum, Dickson's Motion to Dismiss is GRANTED. Because the Court holds that it does not have personal jurisdiction over Dickson, it need not reach the merits of Tilray's motions to vacate or stay, and they are thus DENIED as MOOT.

It is so ORDERED.


Dated this 27th day of February, 2024.

Jamal N. Whitehead
United States District Judge

ORDER - 13